IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TESSERA, INC.,<br><br>           Plaintiff,<br><br>    v.<br><br>MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., INFINEON TECHNOLOGIES AG, INFINEON TECHNOLOGIES RICHMOND, LP and INFINEON TECHNOLOGIES NORTH AMERICA CORP.,<br><br>           Defendants._____/ | Case No. C-06-80024-MISC-JW (PVT)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM NON-PARTY HYNIX SEMICONDUCTOR AMERICA, INC.**<br><br>**[Docket Nos. 1 -17]** |

**INTRODUCTION**

Plaintiff Tessera, Inc. ("Plaintiff") moves to compel production of documents from non-party Hynix Semiconductor America, Inc. ("Hynix Semiconductor America"). Non-party Hynix Semiconductor America opposes the motion. On March 21, 2006, the parties appeared for hearing. Having reviewed the papers and considered the arguments of counsel and for the reasons set forth below, the court grants in part and denies in part plaintiff Tessera's motion to compel production of documents from non-party Hynix Semiconductor

America.[1]

## BACKGROUND

Plaintiff Tessera develops semiconductor packaging technology. Semiconductor packaging serves many purposes, including acting as the electrical interface between semiconductor chips and circuit boards and protecting semiconductor chips from damage, contamination and stress. Tessera holds more than 300 patents for semiconductor packaging technology which it licenses to various semiconductor manufacturing companies throughout the world.

In the early 1990s, Tessera developed certain semiconductor packaging technology to package the synchronous dynamic random access memory chip developed by Rambus, Inc. in or around the same time period ("RDRAM").[2] The synchronous RDRAM chip was apparently a revolutionary innovation in microprocessor architectural technology because it allowed for performance of more complex and faster operations and outpaced other circuitry technology available at that time. Indeed, Intel adopted the synchronous RDRAM chip as next generation memory technology for its microprocessors in 1996. In 1998, reference design for the synchronous RDRAM included Tessera's semiconductor packaging technology. A reference design sets forth the assembly instructions for the synchronous RDRAM to semiconductor manufacturers. Therefore, Tessera's semiconductor packaging technology became a necessary component in the manufacture of synchronous RDRAM chips.

Plaintiff Tessera licenses its semiconductor packaging technology directly to semiconductor manufacturers (not Rambus itself). Typically, licensing agreements require the semiconductor manufacturers to pay Tessera royalties on the volume of synchcronous RDRAM chips sold which uses its semiconductor packaging technology.

---

[1] The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

[2] Unlike other dynamic random access memory chips ("DRAM"), the RDRAM version developed by Rambus incorporated new circuitry and packaging technology. Initially, DRAM chips were developed to respond to the increased need for semiconductor memory technology used in personal computers, servers and other devices.

2

On April 13, 2005, plaintiff Tessera filed an amended complaint against defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., Infineon Technologies AG, Infineon Technologies Richmond, LP and Infineon Technologies North America Corporation in U.S. District Court in the Eastern District of Texas. By its complaint, plaintiff Tessera alleges, *inter alia,* patent infringement, antitrust violations and various state law claims. Defendants are semiconductor manufacturers. Plaintiff Tessera complains that defendants unlawfully colluded with others to boycott the synchronous RDRAM chip. The effect of the boycott was to reduce supply and increase the price for whatever synchronous RDRAM chips were produced. Plaintiff Tessera alleges that defendants conspired to boycott the synchronous RDRAM chips to reduce demand for them and artificially inflate the price of pre-existing and inferior DRAM chips for their own financial gain. Defendants' actions even caused Intel to abandon exclusive use of synchronous RDRAM chips in its microprocessors. Plaintiff Tessera alleges that defendants' actions deprived the company of significant royalties.

Prior to the filing of plaintiff Tessera's complaint, the Federal Trade Commission ("FTC") had undertaken an investigation and found that semiconductor manufacturers, including Infineon Technologies AG, Infineon Technologies Richmond, LP and Infineon Technologies North America Corporation (the "Infineon companies"), Micron Technologies, Inc., Micron Semiconductor Products, Inc. (the "Micron companies") and Hynix Semiconductor Industries, Inc. ("Hynix, Inc."), had colluded to boycott and impact the market price of DRAM chips. The U.S. Department of Justice also had undertaken such an investigation. On May 11, 2005, Hynix, Inc. pleaded guilty to an information charging a violation of the Sherman Antitrust Act and was fined $185 million.[3]

---

[3] The information filed by the U.S. Department of Justice alleged that from on or about April 1, 1999 to on or about June 15, 2002, Hynix Semiconductor Industries, Inc. and others participated in a conspiracy in the United States and elsewhere to suppress and eliminate competition by fixing the prices of DRAM chips to be sold to certain original equipment manufacturers of personal computers and servers. For purposes of the plea agreement, the conspiracy related to dynamic random access memory semiconductor devices and modules, including synchronous dynamic random access memory and double data rate dynamic random access memory semiconductor devices and modules, but not Rambus dynamic random access memory semiconductor devices and modules.

3

Notwithstanding the above, various semiconductor manufacturers eventually came to incorporate Tessera's semiconductor packaging technology in the manufacture of newer generation DRAM chips. Hynix, Inc. and Samsung, which are two of the largest semiconductor manufacturers, currently license Tessera's technology. As part of its license, Hynix, Inc. currently makes back payments to plaintiff Tessera for DRAM chips which previously had used its semiconductor packaging technology.

On October 14, 2005, U.S. District Court Judge Leonard Davis, presiding in the underlying litigation, granted defendants' partial motion to dismiss on the grounds that plaintiff Tessera had not met the standing requirements to bring an antitrust suit ("October 14, 2005 Order"). Specifically, plaintiff Tessera must show that as a licensor in the semiconductor chip market, it was a target of defendants' conspiracy.

On September 27, 2005, plaintiff Tessera served non-party Hynix Semiconductor America with a subpoena duces tecum seeking production of documents. On January 27, 2006, plaintiff Tessera filed a motion to compel documents. On February 28, 2006, Hynix Semiconductor filed an opposition to the motion to compel. On March 7, 2006, plaintiff Tessera filed a reply. On March 8, 2006, non-party Hynix Semiconductor America filed a sur-reply.[4] Pursuant to stipulation and order, non-party Hynix Semiconductor America filed a sur-reply on March 13, 2006. On March 14, 2006, plaintiff Tessera filed further response to the sur-reply.

## STANDARD

A party may serve a subpoena to obtain discovery from a non-party. Fed. R. Civ. P. 45. The Advisory Committee Notes further state that a non-party subject to a subpoena is required to produce materials in its control, which may or may not be located within the district or territory that the subpoena has been served. Fed. R. Civ. P. 45 advisory committee notes on 1991 amendments. A non-party is subject to the same scope of discovery as a party

---

[4] Non-party Hynix Semiconductor America did not seek court approval prior to filing its sur-reply. Generally, leave of the court is necessary to file a sur-reply. "[O]nce a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval." Civ. L.R. 7-3(d). On March 9, 2006, non-party Hynix Semiconductor America notified the court it had withdrawn the sur-reply.

4

served with Rule 34 requests. *Id. See also,* Fed R. Civ. P. 45 advisory committee notes on 1970 amendments ("scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."). Under Rule 34, the rule governing the production of documents between parties, the proper scope of discovery is as specified in Rule 26(b).

Under the Federal Rules of Civil Procedure,

> [p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). Relevancy, for the purposes of discovery, is defined broadly, although it is not without "ultimate and necessary boundaries." *Pacific Gas and Elec. Co. v. Lynch,* Case No. C-01-3023 VRW, 2002 WL 32812098, at *1 (N.D. Cal. August 19, 2002) (citing *Hickman v. Taylor,* 329 U.S. 495, 507 (1947)).

A court, however, has discretion to limit discovery if:

(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or

(iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2). "A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." Fed. R. Civ. P. 45(c)(1).

**DISCUSSION**

Plaintiff Tessera moves to compel production of documents from non-party Hynix Semiconductor America on the grounds that the documents requested are relevant, that the documents sought from Hynix, Inc. are within the control of its U.S. subsidiary Hynix Semiconductor America and that the documents sought are within three narrowly tailored categories.

### A.    Documents Subpoenaed are Relevant

Hynix, Inc. is a Korean company and parent to U.S. subsidiary, Hynix Semiconductor America. Because Hynix, Inc. participated in the price fixing conspiracy with various semiconductor manufacturers, plaintiff Tessera alleges that Hynix Semiconductor America has documents especially relevant to the underlying litigation. Plaintiff Tessera seeks documents from Hynix, Inc. and Hynix Semiconductor America and "each of their successors, predecessors and related entities, including subsidiaries, parent corporations, divisions, officers, directors, employees, agents, representatives, attorneys and anyone acting on their behalf." (collectively the "Hynix Semiconductor companies"). Specifically, plaintiff Tessera seeks documents responsive to the following document requests: (1) documents already produced in other cases involving the same issues in Tessera's case against Micron Technology, Inc. and the Infineon companies; (2) documents relating to Tessera and its technology; and (3) communications relating to packaging technology used in DRAM products.

Non-party Hynix Semiconductor America challenges the relevance of the requested documents on the grounds that the Korean parent company pleaded guilty to an antitrust violation that was unrelated to the synchronous dynamic random access memory chip developed by Rambus. Indeed, the plea agreement specifically excluded RDRAM chips. The claims set forth in the complaint filed in the underlying litigation relate to price fixing of RDRAM chips only. Therefore, Hynix Semiconductor America rejects any attempt by plaintiff Tessera to suggest the documents requested are relevant because the Hynix Semiconductor companies participated in claims of price fixing for the DRAM chips.

As the Hynix Semiconductor companies were semiconductor manufacturers of DRAM chips during the relevant time period, currently license plaintiff Tessera's semiconductor packaging technology and are making back payments for prior use of such technology and have been involved in numerous governmental investigations, patent and antitrust litigation matters which involved defendants Micron and Infineon, the documents requested are relevant to the claims set forth in plaintiff Tessera's complaint.

6

### 1. Hynix Semiconductor America Does Not Have Control Over All Documents in Possession of its Parent Company, Hynix Semiconductor Industries, Inc.

Plaintiff Tessera argues that non-party Hynix Semiconductor America is required to produce responsive documents from parent company, Hynix, Inc., which are in its "possession, custody or control." Plaintiff Tessera argues that Hynix Semiconductor America controls documents even in the possession of Hynix, Inc. because it has the legal right to obtain such documents on demand. Though the Ninth Circuit has not specifically defined what constitutes a "legal right" to obtain documents "on demand," plaintiff Tessera argues that the language is not to be narrowly interpreted. Rather the inquiry should be factual and case specific. In support of its position, plaintiff Tessera cites to cases where courts have found that a subsidiary may have control of documents in possession of the parent company. For example, courts have determined that a subsidiary controls documents in possession of the parent company when counsel for the subsidiary has admitted access to documents in possession of the parent company or when the subsidiary can obtain documents in possession of the parent company in the ordinary course of business. *See, e.g., Hunter Douglas, Inc v. Comfotex Corp.,* No. M8-85 (WHP), 1999 U.S. Dist. LEXIS 101 (S.D.N.Y. Jan. 11, 1999) and *Camden Iron & Metal, Inc. v. Marubeni America Corp.,* 138 F.R.D. 438 (D.N.J. 1991).

In *Choice-Intersil Microsystems, Inc. v. Agere Sys.,* 224 F.R.D. 471 (N.D. Cal. 2004) the court compelled the production of documents from a non-party that was the wholly-owned U.S. subsidiary of a German parent company. Plaintiff Choice-Intersil alleged claims of breach of contract and trade secret misappropriation related to a wireless medium access controller chip ("WMAC"). Despite arguments that the U.S. subsidiary and the German parent company were distinct entities and that the U.S. subsidiary did not have control of documents in possession of the German parent company, the court found that the U.S. company was a wholly-owned subsidiary of the German parent company, that notwithstanding changes in market conditions, the U.S. subsidiary would have marketed the

1  WMAC in North America, that the U.S. subsidiary and the German parent company shared
2  databases for documents and records and that the U.S. subsidiary was able to obtain
3  documents from the German parent company related to the marketing of the WMAC chip
4  upon demand.  Based on the ability of the U.S. subsidiary to obtain high-level marketing
5  documents related to WMAC from the German parent company, the court concluded the U.S.
6  subsidiary also had control over technical documents related to WMAC also in possession of
7  the German parent company.

8        Here, plaintiff Tessera argues that Hynix Semiconductor America has access to
9  documents from its Korean parent company.  First, during the parties' efforts to meet and
10 confer, counsel for Hynix Semiconductor America admitted that it has the ability to produce
11 documents which originated from the Korean parent company.  Second, documents
12 originating from the parent company already would have been produced in response to
13 preceding litigation, including the FTC and U.S. Department of Justice investigations.
14 Moreover, the Korean parent company and the U.S. subsidiary share the same U.S. counsel
15 in whose offices such documents are likely stored.

16       Hynix Semiconductor America also has the ability to obtain documents from Hynix,
17 Inc. in the ordinary course of business.  Plaintiff Tessera points to the Hynix website which
18 states that non-party Hynix Semiconductor America forms part of a global sales network for
19 the sales, marketing and distribution of Hynix products in the United States.  Additionally,
20 the website reflects that Hynix Semiconductor America is involved in the research and
21 development of, *inter alia,* advanced packaging technology.  Finally, Hynix, Inc. exercises
22 significant control over its U.S. subsidiary.  The Korean parent company owns 96.7 percent
23 of non-party Hynix Semiconductor America and the two companies have overlapping
24 directors.  Of the three board of directors for the U.S. subsidiary, two overlap with the
25 Korean parent company.  The CEO and Chairman of the Board for Hynix, Inc. is also a
26 director on the board of the U.S. subsidiary.

27       In opposition, non-party Hynix Semiconductor America disputes that it controls
28 documents in possession of the Korean parent company.  Instead, Hynix Semiconductor

8

America explains that during efforts to meet and confer on discovery issues, counsel offered to produce a limited set of documents which originated from the Korean parent company and was previously produced in Rambus-related litigation.[5] Hynix Semiconductor America contends such an offer fails to demonstrate that it has access to any and all documents in possession of its Korean parent company and therefore, plaintiff Tessera has not met its burden in showing the U.S. subsidiary controls documents in possession of the parent company. Non-party Hynix Semiconductor America distinguishes the *Choice-Intersil* case by arguing that the court compelled production of documents, which was very narrow in scope. There, the court ordered production of documents for the marketing and technical development of a specific product because the U.S. subsidiary was to become the North American distributor for that product and therefore, the U.S. subsidiary had access to those specific-type documents from the parent company.

"Control is defined as the legal right to obtain documents upon demand." *United States v. International Union of Petroleum and Indus. Workers, AFL-CIO,* 870 F.2d 1450, 1452 (9th Cir, 1989). "The party seeking production of the documents bears the burden of proving that the opposing party has such control." *Id.*

Aside from documents from the Korean parent company which are already in possession of the U.S. subsidiary as a result of preceding governmental investigations, antitrust and patent litigation, plaintiff Tessera has not shown that Hynix Semiconductor America has the legal right to obtain other documents from Hynix, Inc. upon demand. Although the Korean parent company owns 96.7 percent of the U.S. subsidiary, the Hynix Semiconductor companies form a global sales, marketing and distribution network, the Hynix Semiconductor companies have undertaken joint efforts in research and development of

---

[5] In a December 7, 2005 letter, counsel for Hynix Semiconductor America stated that "[a]s a compromise . . . , we would be willing to produce to Tessera documents originating from [Hynix, Inc.] which have already been produced, whether in response to discovery or through other agreements, within the litigations referenced in your letter, provided these documents contain the search terms discussed below. I want to stress that we do not believe we are legally required to produce these documents under the subpoena, but are offering to produce these documents in the spirit of compromise." Declaration of Keith L. Slenkovich in Support of Non-party Hynix Semiconductor America, Inc.'s Opposition to Plaintiff Tessera's Motion to Compel Production of Documents Pursuant to Subpoena to Hynix Semiconductor America, Inc. ("Slenkovich Decl."), Exh. D.

9

advanced packaging technology, the Hynix Semiconductor companies have overlapping directors and share counsel, there is no specific showing that Hynix Semiconductor America has the legal right to obtain any of the documents set forth in the document requests upon demand. In *Choice-Intersil v. Agere, supra,* 224 F.R.D. at 472, the court found that the U.S. subsidiary had specific access to certain documents in possession of the German parent company. Plaintiff Tessera makes no showing that Hynix Semiconductor America shares any document databases with its Korean parent company or that Hynix Semiconductor America can obtain documents related to DRAM, RDRAM or Tessera semiconductor packaging technology from its Korean parent company upon demand. To the extent, the two entities share the same counsel, their counsel alone could have sought documents independently from each of the respective entities to respond to FTC and U.S. Department of Justice investigations and other antitrust and patent related matters. Moreover, it appears the pre-existing database of relevant documents was collected in response to litigation matters and not obtained by the U.S. subsidiary from the parent company in the ordinary course of business. That the Hynix Semiconductor companies form a global network or jointly undertake research and development efforts in advanced packaging technology does not mean that the U.S. subsidiary is wholly-owned or controlled by the parent. *See, e.g., U.S. v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO,* 870 F.2d 1450, 1453-1454 ("Control must be firmly placed in reality, not in an esoteric concept such as 'inherent relationship.'") and *In re Legato Systems, Inc.,* 204 F.R.D. 167 (N.D. Ca. 2001) (defendant compelled to produce his testimony before the SEC because defendant was entitled to request the transcript and such request would only be denied for "good cause."). Therefore, the duty by Hynix Semiconductor America to produce documents from its Korean parent company is limited to existing electronic databases containing documents already in its possession (or that of their counsel).

B.  **Burden of Subpoena to Non-Party Hynix Semiconductor America**

1.  **Scope of the Document Requests**

Plaintiff Tessera contends it has subpoenaed documents from Hynix Semiconductor America in three narrowly tailored categories. Non-party Hynix Semiconductor America asserts that the document requests are overbroad and burdensome.

a.  **Document Request No. 1**

Document Request No. 1:

All documents produced in antitrust-related legal proceedings, including the FTC investigation entitled *In the Matter of Rambus Incorporated,* Docket No. 9302, the DOJ investigation of Hynix's anticompetitive conduct in the DRAM industry, *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation,* Docket No. 02-cv-01486 filed in the Northern District of California, and *Coordinated DRAM Cases,* Judicial Council Coordination proceeding No. 4265 filed in the California Superior Court, San Francisco County.

Response to Document Request No. 1:

Hynix Semiconductor America objects to this request on the grounds that it is overbroad, burdensome, and not relevant to the matters at issue in the litigation in this case. In addition to seeking many millions of pages of documents originating from numerous parties, almost all of which are subject to various forms of protective order, HSA is informed and believes that under the state of current proceedings at issue in the present litigation, the only documents which relate to the threshold issue of antitrust standing for Tessera are documents that specifically relate to Tessera. Specifically, the Court in this matter recently ruled that "Tessera's only remaining avenue for its antitrust claims is to show that as a licensor to the chip market, it was the target of the Defendants' conspiracy." For Tessera to impose on a third party the enormous burden suggested by this overly broad request under these circumstances would be disproportionately burdensome and oppressive. HSA is willing to meet and confer with Tessera to appropriately limit the scope of this request so that it is limited to the issues in the case and does not impose an undue burden on HSA. Any document produced must be governed by an appropriate protective order.

Plaintiff Tessera asserts the first document request is narrowly tailored because it seeks documents related to the FTC and U.S. Department of Justice investigations of the DRAM industry and any related civil actions. Documents from preceding litigation may be relevant in showing the nature and breadth of the conspiracy in the underlying litigation by defendants and third-parties, such as the Hynix Semiconductor companies. Specifically, plaintiff Tessera considers the documents relevant to issues in the case, including the scope

of the semiconductor manufacturers' conspiracy to manipulate the DRAM market, semiconductor manufacturers' attempts to boycott RDRAM and the semiconductor manufacturers exchange of technical information to avoid payments of significant royalties to companies such as Rambus and Tessera.

Non-party Hynix Semiconductor America objects to the request on the grounds that it is overbroad and burdensome. Hynix Semiconductor America complains that the request encompasses "thousands of documents" and to seek documents produced in "any antitrust-related legal proceeding" is overbroad. Moreover, Hynix Semiconductor complains that the request has not been narrowed to specify whether it must produce responsive documents in "any antitrust-related legal proceeding" in which it was a party, witness and/or non-party. Hynix Semiconductor America further complains that it possesses thousands of pages of documents that even originated from other parties and subject to various forms of protective order.

In reply, plaintiff Tessera asserts that Hynix Semiconductor America need merely produce existing electronic databases of documents on DVD-ROMS or hard drives to respond to the subpoena. Plaintiff Tessera further asserts that Hynix Semiconductor America needlessly delayed its response by failing to agree to a list of search terms proffered during the parties' meet and confer. For example, Hynix Semiconductor America would not agree to include defendants Micron companies and Infineon companies on the list of proposed search terms. Plaintiff Tessera also asserts that the U.S. Department of Justice investigation included the RDRAM chip and whether or not Hynix, Inc. pleaded guilty to an antitrust violation that excluded RDRAM does not make the document request not relevant. Finally, plaintiff Tessera explains it only seeks documents produced by Hynix Semiconductor companies in which it was a party in preceding "antitrust-related" legal proceedings.

As an initial matter, plaintiff Tessera is not limited to seeking documents related to establishing antitrust standing in the underlying litigation. During efforts to meet and confer which spanned from early September 2005 through late January 2006, the parties discussed a proposed list of search terms to run through electronic document databases created by the

12

Hynix Semiconductor companies for preceding governmental investigations, related antitrust and patent litigation. Plaintiff Tessera proposed the following list of search terms: Tessera, packaging, package, packages, ball grid array, chip scale package, chip scale packaging, BGA, CSP, compliant, compliant layer, patent, Micron and Infineon. Hynix Semiconductor companies later agreed to the proposed list of search terms except for "patent," "Micron" and "Infineon." Plaintiff Tessera later rejected non-party Hynix Semiconductor America's counter-proposal and brought this motion to compel. Following the filing of its motion to compel, plaintiff Tessera sought further compromise by requesting that the proposed search term list include the terms RDRAM and Rambus. In turn, non-party Hynix Semiconductor America rejected the counter-counter-proposal. Hynix Semiconductor America complained that including "RDRAM" and "Rambus" to the proposed list of search terms yielded 150,000 document "hits," which consists of approximately 2.2 million pages.

Accordingly, non-party Hynix Semiconductor America shall produce on DVD-ROMS or hard drives documents derived using specific search terms from databases created for the U.S. Department of Justice investigation of the DRAM industry and any related preceding litigation in which the Hynix Semiconductor companies were a party. The following search terms shall be run through electronic document databases for production to plaintiff Tessera: Tessera, packaging, package, packages, ball grid array, chip scale package, chip scale packaging, BGA, CSP, compliant, compliant layer, RDRAM, Micron and Infineon. Because Hynix Semiconductor America has stated that the electronic document database for the FTC investigation of the DRAM industry cannot be electronically searched (beyond the "re" line), Hynix Semiconductor America shall produce the entire electronic document database from that investigation on hard drive or DVD-ROM subject to the following conditions.[6] Hynix Semiconductor America shall notify relevant third parties that documents subject to

---

[6] The court was surprised that during the hearing plaintiff Tessera admitted that it had not thoroughly reviewed the 5,200 documents previously produced by non-party Hynix Semiconductor America. Hynix Semiconductor America stated that a portion of the documents already produced contain some FTC documents. In light of the looming discovery deadline, the court will allow production of documents from the FTC investigation despite plaintiff Tessera's admitted failure to thoroughly review all documents already produced by non-party Hynix Semiconductor America.

13

1  protective order have been or will be produced to plaintiff Tessera. In an effort however to
2  avoid any undue burden on non-party Hynix Semiconductor America, plaintiff Tessera shall
3  assume responsibility to review the documents produced on DVD-ROMS and/or hard drives
4  for responsiveness and obtain permission from any third parties for permission to use such
5  documents. The DVD-ROMS and/or hard drives and *all* documents contained therein
6  (regardless of their responsiveness to document request no. 1) shall be designated
7  "Confidential-Outside Attorney Eyes Only" pursuant to the stipulated protective order
8  negotiated between the parties in this motion and in the underlying litigation. Plaintiff
9  Tessera shall assume the burden to challenge the designation of any documents produced by
10 Hynix Semiconductor America. As discussed above, production of documents from the
11 Korean parent company is limited to documents which preexisted on electronic databases
12 from preceding litigation.

### b. Document Request No. 2

Document Request No. 2:

　　　All documents, including internal communications and communications with third-parties, concerning Tessera or Tessera technology.

Response to Document Request No. 2:

　　　Hynix Semiconductor America ("HSA") objects to this request on the grounds that it is vague and ambiguous in its use of the terms 'concerning Tessera,' causing HSA to speculate as to what documents are sought. HSA is willing to meet and confer with Tessera to appropriately limit the scope of this request so that it is limited to the issues in the case and does not impose an undue burden on HSA. Any documents produced must be governed by an appropriate protective order.

22 　　　As set forth in Judge Davis's July 13, 2005 Order, plaintiff Tessera must allege certain
23 facts as a licensor in the chip market to establish antitrust standing. Therefore, plaintiff
24 Tessera contends it seeks documents identified in this document request to determine
25 whether the Hynix Semiconductor companies may have had communications with others to
26 conspire to target licensors in the chip market, including Tessera and its technology.
27 　　　Non-Party Hynix Semiconductor complains that the second document request is vague
28 and ambiguous because the term "Tessera technology" is undefined in the subpoena. Hynix

Semiconductor America contends that it is willing to produce documents concerning Tessera only.

In reply, Tessera asserts that Hynix Semiconductor America's objections are baseless. Tessera states that during efforts to meet and confer, it provided further elaboration as to the meaning of "Tessera technology." Tessera explains that its technology is known by certain trademarks and that the Hynix Semiconductor companies have licensed Tessera's technology and some of its employees have received specific training toward its implementation. Based on Hynix Semiconductor America's agreement to produce responsive documents relating to Tessera and the ensuing clarification from plaintiff regarding the meaning of its technology, the motion to compel production of documents to document request no. 2 is granted. As discussed above, production of documents from the Korean parent company is limited to documents which preexisted on electronic databases from preceding litigation.

### c. Document Request No. 3

Document Request No. 3:

All communications and presentations, including internal communications and presentations and those with third-parties, relating to packaging technology used in or considered for use in DRAM, including SDRAM, RDRAM, DDR, DDR2 and DDR3.

Response to Document Request No. 3:

Hynix Semiconductor America ("HSA") objects to this request on the grounds that it is overbroad, burdensome, and not relevant to the matters at issue in the litigation in this case. In consideration of the foregoing general and specific objections, HSA will produce no documents pursuant to this request. HSA is willing to meet and confer with Tessera to appropriately limit the scope of this request so that it is limited to the issues in the case and does not impose an undue burden on HSA. Any document produced must be governed by an appropriate protective order.

Plaintiff Tessera argues that it seeks documents identified in the third document request for the same reasons it seeks documents identified in the second document request. The documents sought may be relevant to establishing plaintiff Tessera's antitrust standing in the underlying litigation. Communications between the Hynix Semiconductor companies and others relating to semiconductor packaging technology may show that plaintiff Tessera and/or it technology was targeted by the defendants Micron companies and Infineon

companies.

Hynix Semiconductor America objects to the document request on the grounds that it is overbroad, burdensome and not relevant. Additionally, plaintiff Tessera has placed no time limitation on the breadth of the request. Hynix Semiconductor America asserts that the request involves potentially millions of pages of documents because the request is not limited by time, by type of packaging, by identifying third parties, by generation or by type of DRAM.

In reply, plaintiff Tessera states that the Hynix Semiconductor companies' communications with others relating to packaging technology in DRAM chips may show preferences for certain packaging technology. The communications between the Hynix Semiconductor companies and others may show that defendants in the underlying litigation chose certain packaging technology for anticompetitive reasons.

As production in response to document request no. 3 may involve millions of pages of documents, the court finds the request constitutes an undue burden on non-party Hynix Semiconductor America. Moreover, documents produced in document request no. 2 would show if there were efforts by defendants in the underlying litigation to choose certain packaging technology rather than Tessera's packaging technology for anticompetitive reasons. For the reasons stated by plaintiff Tessera in seeking documents responsive to document request no. 3, it is also duplicative. Therefore, plaintiff's motion to compel production of documents in response to document request no. 3 is denied without prejudice.[7]

**2.   Costs Incurred by Non-party Hynix Semiconductor America**

Finally, non-party Hynix Semiconductor America argues that the document requests are unduly burdensome. Despite non-party Hynix Semiconductor America's extensive efforts to meet and confer and determine the scope of the subpoena duces tecum, the burden and attendant cost of such a large scale document production has been significant. Non-party

---

[7] During the hearing, plaintiff Tessera stated for the first time that it would agree to limit production of documents responsive to document request no. 3 to certain third parties, including JEDEC, SLDRAM, Inc., Advanced DRAM Technology, Synclink Consortium and Counsel for Computing Power. However, this modification was not previously discussed in the moving papers, the reply or plaintiff's response to the sur-reply.

16

Hynix Semiconductor America has collected, reviewed and designated more than 100,000 pages of documents for production. Moreover, non-party Hynix Semiconductor America has incurred costs of more than $70,000. Therefore, non-party Hynix Semiconductor America seeks reimbursement for its costs.

"[A]n order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded." Fed. R. Civ. P. 45(c)(2)(B). In determining whether to award costs to a non-party, the court considers factors, including the scope of the request, the invasiveness of the request, the need to separate privileged material, the non-party's financial interest in the litigation, whether the party seeking production of documents ultimately prevails, the relative resources of the party and the non-party, the reasonableness of the costs sought and the public importance of the litigation. William W. Schwarzer, A. Wallace Tashima, James M. Wagstaffe, *Federal Civil Procedure Before Trial,* 11:2308-2309. Generally, attorneys' fees and overhead costs are not permitted. *Id.*

Because non-party Hynix Semiconductor America may incur significant costs in producing documents responsive to the subpoena duces tecum, an award to cover such costs may be appropriate. As Hynix Semiconductor America has not completed production, and the extent of the total costs incurred is not available, the court is not prepared to rule on the merits of such a motion at this time. Hynix Semiconductor America may bring a motion at a later date seeking award of such costs.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel production of documents from non-party Hynix Semiconductor America is granted in part and denied in part.

1  Hynix Semiconductor America shall produce documents within fifteen (15) days of the date
2  of this order.[8]
3      IT IS SO ORDERED.
4  Dated:   *3/22/2006*

*Patricia V. Trumbull*
PATRICIA V. TRUMBULL
United States Magistrate Judge

---

[8] Non-party Hynix Semiconductor America's production of documents is subject to a stipulated protective order. *See,* Stipulated Protective Order Regarding Documents Produced Pursuant to Subpoena to Hynix Semiconductor America, Inc. signed by U.S. Magistrate Judge John D. Love, Eastern District of Texas, on March 6, 2006 ("March 6, 2006 Order"). The March 6, 2006 Order incorporates by reference the term and protections of the July 29, 2005 stipulated protective order in the underlying action. Declaration of Trevor V. Stockinger In Support of Tessera, Inc.'s Response to Sur-reply to Tessera's Motion to Compel Production of Documents Pursuant to Subpoena to Hynix Semiconductor America, Inc. ("Stockinger Suppl. Decl."), Exhs. 17 and 18.